## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

CPI CARD GROUP INC.,

      Plaintiff,

v.

MULTI PACKAGING SOLUTIONS, INC.,

      Defendant.

Jury Trial Demanded

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CPI Card Group Inc. ("CPI" or "Plaintiff"), by and through its attorneys, hereby brings this action for patent infringement against Defendant Multi Packaging Solutions, Inc. ("MPS" or "Defendant") as follows:

### THE PARTIES

1. CPI is a corporation organized and existing under the laws of Delaware with its principal place of business at 10368 West Centennial Road, Littleton, CO 80127. CPI is a leading provider of payment cards and related services, including packaging products for various retail industries. CPI's products include secure packaging for activatable point-of-sale cards.

2. On information and belief, MPS is a Delaware corporation with its headquarters located at 150 East 52nd Street, 28th Floor, New York, New York 10022. MPS may be served with process via its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. MPS is a supplier of secure card packaging to, among

others, American Express. MPS provides its customers with secure packaging for activatable point-of-sale cards, including for example, the American Express Jackson Hewitt Tax Service Prepaid Card and the Target American Express Gift Card packages.

## JURISDICTION AND VENUE

3.  CPI asserts a claim for patent infringement of United States Patent No. 8,419,889 (the "'889 patent") against MPS arising under the Patent Act of 1952, 35 U.S.C. §§ 1 *et seq*. Accordingly, this Court has jurisdiction over the subject matter of this action under at least 28 U.S.C. §§ 1331 and 1338(a).

4.  This Court has personal jurisdiction over MPS under the United States Constitution, the State Laws of Colorado, and/or the Federal Rules of Civil Procedure. MPS has substantial and continuous contacts with this judicial district and elsewhere in Colorado. MPS has established minimum contacts within the forum such that the exercise of jurisdiction over MPS would not offend traditional notions of fair play and substantial justice. For example, on information and belief, MPS manufactures the American Express Jackson Hewitt Tax Service Prepaid Card and the Target American Express Gift Card packages that are sold and/or offered for sale throughout the United States, including in Colorado. Furthermore, MPS has a manufacturing facility located at 7025 S. Fulton Street, Centennial, Colorado 80112. In addition, MPS has committed and continues to commit acts of patent infringement in this judicial district, as set forth below. In conducting its business in Colorado and this judicial district, MPS derives substantial revenue from its patent infringement.

5.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because, among other reasons, MPS transacts business in the State of Colorado, has a

manufacturing facility in the State of Colorado, and has committed and continues to commit acts of patent infringement in this district, by selling and offering to sell the American Express Jackson Hewitt Tax Service Prepaid Card and the Target American Express Gift Card packages to Colorado consumers.

## **FACTS**

6.  CPI has over 20 years of experience in the card payments market and related services and is a trusted partner to financial institutions and a supplier of numerous products to its customers. CPI has built its reputation based on its innovative products, product consistency, quality, and customer service. As the card payments market has grown, CPI has continued to provide new and improved solutions to its customers. Among the secure payment solutions CPI provides to its customers are EMV cards, prepaid cards, instant issuance cards, mobile payment solutions, and e-Services to help with card management. CPI also provides card design and customization services.

7.  A fast growing sector of the card payments market is prepaid debit cards (which include activatable point-of-sale cards). Prepaid debit cards help provide end customers, the consumers, with flexibility in how they purchase things, without requiring good credit or using checks or cash. Unlike with a credit card or checks, users of prepaid debit cards are not required to be approved by any banks or to have a checking account, and unlike with cash, prepaid debit cards have a modicum of security features and are much more personable to give to people than cash. For these reasons, among others, prepaid debit cards are especially popular during the holidays, as they provide a simple way for people to exchange gifts. Usage of prepaid debit cards has risen steadily over the years.

8. While prepaid debit cards have become more popular, so have attempts to tamper with prepaid debit cards. Once a prepaid debit card has been activated and is ready for use, it is almost akin to having cash. Thus, there has been an increasing need to have better tampering resistant packaging for prepaid debit cards to prevent unauthorized access to the cards. CPI is a market leader in secure card packaging and has the largest portfolio of secure retail packaging for prepaid debit cards. CPI's portfolio of secure card packaging offerings include tamper-evident fraud reduction packaging solutions that use the latest in patented technology. CPI serves over six market leading customers, including American Express, by providing them with its patented secure card packaging. American Express and CPI's other customers are some of CPI's most important customers and comprise a large portion of CPI's revenues in the secure card packaging sector. In order to remain a leader in this sector and to continue to develop new technological advances in secure card packaging, CPI has obtained multiple patents to its secure card packaging, including the '889 patent.

9. On April 16, 2013, the United States Patent & Trademark Office ("USPTO") duly and legally issued the '889 patent, entitled "Ultrasecure Card Package," to CPI Card Group as assignee. CPI is the owner of all right, title, and interest in the '889 patent, including the right to recover damages for past, present, and future infringement of the patent and the right to seek injunctive relief against infringement of the patent. A true and correct copy of the '889 patent is attached as Exhibit A.

10. The '889 patent is currently in full force and effect and is entitled to a presumption of validity under the law.

11. The '889 patent is directed to methods for creating a secure package for securing a point-of-sale card that is designed to deter theft and unaccountable activation of activatable point-of-sale cards. Activatable point-of-sale cards are typically stored and displayed in merchant stores in an inactivated state to reduce the risk of theft. The cards are essentially useless until they are activated by a retailer upon purchase by the end user. Despite this, point-of-sale cards are still often stolen, with one method of theft being obtaining the account number and/or PIN number on the card without permanently removing the card from the packaging, then waiting for the card to be activated by an unsuspecting end user. In order to combat this, the '889 patent teaches methods to produce enhanced security card packaging that is capable of indicating unauthorized access to a packaged card.

12. On information and belief, MPS has made, continues to make, sold, offered to sell, and continues to sell and offer to sell secure packaging for activatable point-of-sale cards, for example, the American Express Jackson Hewitt Tax Service Prepaid Card and the Target American Express Gift Card packages (collectively, the "Accused Products"). The design and process to produce the Accused Products infringe at least one valid claim of the '889 patent.

13. CPI sent MPS a cease and desist letter on July 1, 2016. MPS acknowledged the July 1, 2016 letter on July 18, 2016 but did not otherwise provide a response to the letter. Accordingly, MPS has had knowledge of the '889 patent since at least as early as July 1, 2016, and in any event, no later than July 18, 2016.

14. CPI and MPS are direct competitors. MPS's continued infringement of the '889 patent has caused and is causing irreparable harm to CPI, as MPS is competing with CPI for the same customers for the same products—products protected by the '889 patent. On information

and belief, by using the methods of the '889 patent to produce the Accused Products, MPS is able to sell its Accused Products at undercutting prices, thereby improperly gaining market share in the secure card packaging market and causing irreparable harm to CPI. MPS's use of the claimed methods of the '889 patent are impeding and interfering with CPI's business. With the holiday shopping season coming up shortly, an increase in sales of point-of-sale activatable cards is expected, and CPI will only further be harmed unless and until MPS's acts of infringement are enjoined and restrained by order of this Court.

## COUNT I – INFRINGEMENT OF THE '889 PATENT

15. CPI incorporates paragraphs 1 through 14 by reference.

16. MPS has directly infringed, literally or under the doctrine of equivalents, at least claims 1 and 18 of the '889 patent by making, having made, importing, using, offering for sale, and/or selling the Accused Products, and by performing, implementing, and carrying out, processes and methods with respect to the Accused Products, in violation of 35 U.S.C. §§ 271(a) and (g).

17. On information and belief, the method used by MPS to produce the Accused Products includes the steps of providing a first panel and a second panel each comprising paper stock and having a non-polymeric coated inner surface; printing a heat-activatable adhesive directly upon the non-polymeric coated inner surface of the first panel; allowing the heat-activatable adhesive to dry upon the non-polymeric coated inner surface of the first panel; then locating a point-of-sale activatable card between the inner surface of the first panel and an inner surface of the second panel; and finally, activating the heat-activatable adhesive by applying heat and pressure only in a region substantially surrounding and offset from the point-of-sale

activatable card to enclose the point-of-sale activatable card in a secure space between the first and second panels, as required by claim 1.  Charts showing infringement of claim 1 of the '889 patent by the Accused Products are attached as Exhibits B and C.

18.     Furthermore, on information and belief, the first panel and second panel of the Accused Products each have a clay coated inner surface and a clay coated outer surface, and the heat-activatable adhesive comprises polyurethane, as required by claim 18.

19.     On information and belief, MPS's infringement is willful.  MPS has been aware of the '889 patent and its infringement thereof since at least CPI's July 1, 2016 cease and desist letter, and in any event, no later than July 18, 2016, when MPS acknowledged the July 1, 2016 cease and desist letter.

20.     CPI has been irreparably harmed by MPS's acts of infringement of at least claims 1 and 18 of the '889 patent, and will continue to be harmed, unless and until these acts of infringement are enjoined and restrained by order of this Court.  CPI has no adequate remedy at law to redress MPS's continuing acts of infringement and continues to lose business and market share as a result of MPS's continuing acts of infringement.  On information and belief, the hardships that would be imposed upon MPS by an injunction are less than those faced by CPI should an injunction not issue.  Furthermore, the public interest would be served by issuance of an injunction because the public has an interest in encouraging innovation and deterring copycat infringement.  Accordingly, CPI is entitled to preliminary and permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

21. As a result of MPS's acts of infringement of at least claims 1 and 18 of the '889 patent, CPI has suffered and will continue to suffer damages. CPI is entitled to compensation for such damages pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, CPI respectfully requests that this Court enter a Judgment and Order in its favor and against MPS as follows:

A. A declaration that MPS has infringed and continues to infringe, either literally and/or under the doctrine of equivalents, at least one claim of the '889 patent in violation of 35 U.S.C. § 271;

B. A declaration that the '889 patent is not invalid and is enforceable;

C. A preliminary and permanent injunction, pursuant to 35 U.S.C. § 283, against MPS and its parents, subsidiaries, affiliates, officers, directors, agents, servants, employees, successors and assigns and all others in active concert or participation with any of the foregoing from any further acts of infringement of the '889 patent;

D. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate CPI for MPS's infringement of the '889 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

E. An equitable accounting of damages owed by MPS for the period of infringement of the '889 patent following the period of damages established by CPI at trial;

F. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

G. An award to CPI of its costs, expenses, and disbursements in this action; and

H.  Granting to CPI such other and further relief as the Court may deem just, proper and equitable under the circumstances.

Date: October 11, 2016　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: */s/ David S. Bloch*
　　　　　　　　　　　　　　　　　　　　　　David S. Bloch, Esq.
　　　　　　　　　　　　　　　　　　　　　　101 California Street
　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94111-5802
　　　　　　　　　　　　　　　　　　　　　　Telephone: (415) 591-1000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (415) 591-1400
　　　　　　　　　　　　　　　　　　　　　　Email: dbloch@winston.com

　　　　　　　　　　　　　　　　　　　　　　Michael J. Scheer, Esq.
　　　　　　　　　　　　　　　　　　　　　　333 South Grand Avenue
　　　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071
　　　　　　　　　　　　　　　　　　　　　　Telephone: (213) 615-1700
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (213) 615-1750
　　　　　　　　　　　　　　　　　　　　　　Email: mscheer@winston.com

　　　　　　　　　　　　　　　　　　　　　　James C. Lin, Esq.
　　　　　　　　　　　　　　　　　　　　　　275 Middlefield Road, Suite 205
　　　　　　　　　　　　　　　　　　　　　　Menlo Park, CA 94025
　　　　　　　　　　　　　　　　　　　　　　Telephone: (650) 858-6500
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (650) 858-6550
　　　　　　　　　　　　　　　　　　　　　　Email: jalin@winston.com

　　　　　　　　　　　　　　　　　　　　**COUNSEL FOR PLAINTIFF,**
　　　　　　　　　　　　　　　　　　　　**CPI CARD GROUP INC.**