IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02536-MEH

CPI CARD GROUP, INC.,

    Plaintiff/Counter Defendant,

v.

MULTI PACKAGING SOLUTIONS, INC.,

    Defendant/Counter Claimant.

---

**ORDER RE: MOTION TO CORRECT COMPLAINT**

---

**Michael E. Hegarty, United States Magistrate Judge**.

    In this patent infringement action, Plaintiff CPI Card Group, Inc. ("CPI") contends that its counsel has learned during discovery that the patent at issue was not assigned to CPI Card Group, Inc., as originally believed, but rather to its subsidiary, CPI Card Group—Minnesota, Inc. CPI's counsel, David Bloch, admits that he erred in originally filing this action on behalf of CPI Card Group, Inc. and, now, seeks an order "correcting" the name of the Plaintiff. Defendant Multi Packaging Solutions, Inc. ("MPS") objects stating CPI has no standing in this case to make such request and, even if it did, its request is untimely and unduly prejudicial. The Court finds CPI fails to demonstrate its constitutional standing in this case and, thus, its motion is denied as moot, and the Court dismisses CPI's claims without prejudice for the Court's lack of subject matter jurisdiction. However, the Court will stay the effect of the dismissal order and grant CPI Card Group—Minnesota an opportunity to move for joinder in this action.

**I.    Background**

CPI initiated this action on October 11, 2016 alleging generally that MPS had infringed, and may continue to infringe, claims of a U.S. Patent No. 8,419,889 patent ("the '889 Patent"), titled "Ultrasecure Card Package," by making, using, importing, offering to sell, and selling its card packaging products. Specifically, CPI contends that MPS used "ZED" machinery to create the same heat-sealing process used by CPI to seal its packaged prepaid debit cards. On December 13, 2016, MPS filed the operative amended answer and counterclaims for declaratory judgment of non-infringement and invalidity of the '889 Patent. The Court issued the governing Scheduling Order in a Patent Case on December 8, 2016, and this case has proceeded accordingly.

In fact, following a tutorial and hearing on August 29, 2017, the Court issued its claim construction order on October 23, 2017, then modified the Scheduling Order in accordance with the parties' proposals on October 31, 2017. As such, the fact discovery deadline is currently January 15, 2018, and the expert discovery cutoff is April 9, 2018.

In the present motion, CPI asserts that its counsel erroneously understood CPI had acquired all patents previously owned by CPI's subsidiaries as part of an initial public offering in October 2015 and explains the "correct" patent assignment history as follows:

> The original patent application leading to the `889 Patent is U.S. Patent Application Serial No. 12/017,227. The '227 Application and any "continuations … based thereon" were assigned by inventor Dennis Smith to UV Color, Inc. on June 5, 2008. UV Color then assigned the rights to the `227 Application and any continuations to CPI Card Group—Minnesota on March 9, 2010. On April, 8, 2011, U.S. Patent Application Serial No. 13/083,178, a continuation of the `227 Application, was filed. The `178 Application matured into the `889 Patent. Thus, CPI Card Group—Minnesota owns the `889 Patent and any other patents or patent applications in the `227 Application's family tree by virtue of the 2010 assignment.
>
> The assignment to CPI Card Group—Minnesota, however, does not appear in the assignment records for the `889 Patent. Instead, the `889 Patent's assignment records reflect a April 28, 2011, assignment of the `178 Application from inventor Dennis Smith to CPI. But this assignment (and the ones that come after it) is later in

2

> time than the March 2010 assignment to CPI Card Group—Minnesota. Thus, Mr. Smith had no rights to convey in the `178 Application at the time of his purported assignment to CPI/ CPI Card Group—Colorado. Nor is there a subsequent assignment from CPI Card Group—Minnesota to CPI, presumably because no one realized that CPI Card Group—Minnesota still owned the `889 Patent despite Mr. Smith's 2011 assignment. As it turns out, CPI Card Group—Minnesota has been the patentee (and not merely the entity that makes and sells the products embodying the `889 Patent) all along.

Mot. 2–3. CPI argues that its request to substitute CPI Card Group—Minnesota as the "correct" Plaintiff is proper, timely, and will not prejudice MPS as it simply seeks to correct a "chain-of-title error." *Id.*

MPS counters that CPI's request is futile because CPI, as an improperly named party, has no standing to seek any relief in this case. Further, MPS contends that CPI should not be allowed to "name a new patent owner without (1) producing all relevant ownership and transaction information, (2) proving which entity actually owns the '889 patent, (3) providing factual explanations for contrary statements, and (4) giving MPS an opportunity to investigate CPI's proof through discovery and challenge it, if necessary." Resp. 9. Finally, MPS argues that even if CPI had standing, it could not meet the requirements necessary to show its requested amendment is proper under the applicable rules.

CPI replies that courts have substituted plaintiffs pursuant to Fed. R. Civ. P. 17(a) when the plaintiff demonstrates a mistake in identifying the proper plaintiff and no prejudice to the defendant(s). CPI asserts that MPS's cited cases are not contrary to such proposition and "allow[] for amendment to name the proper patent owner where the plaintiff sued in the wrong name as a result of an 'honest and understandable mistake.'" Reply 5. CPI argues that MPS articulates no actual prejudice resulting from a simple substitution of the correct party.

Based on CPI's "new" argument concerning Rule 17(a), the Court permitted MPS to file a

surreply on or before November 9, 2017.  MPS contends that Rule 17 does not serve to "cure" standing and jurisdiction; CPI's cited cases are neither precedential nor persuasive; CPI seeks more than a "clerical change" of a party, which is not permitted; and CPI knew or should have known that CPI Card Group—Minnesota was the real party in interest.

## II. Legal Standards

CPI brings its motion pursuant to Rules 15 and 17 of the Federal Rules of Civil Procedure.  Rule 15 provides that, following a 21-day period for service of the complaint or service of a responsive pleading or Rule 12 motion, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a).  Rule 15 instructs courts to "freely give leave when justice so requires." *Id.*  Nevertheless, denying leave to amend is proper if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  In other words, an action should "be brought in the name of the party who possesses the substantive right being asserted under the applicable law, whether that be state or federal."  6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1541 at 462 (3d ed. 2010).  In addition, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).

## III. Analysis

4

As the Federal Circuit has noted, "[s]tanding and real party in interest are two distinct concepts": (1) standing requires that a plaintiff suffer an injury-in-fact fairly traceable to the actions of the defendant that is redressable by the court; and (2) a real party in interest must be "the person who possesses the right to be enforced." *Mitchell Food Prods., Inc. v. United States*, 43 F. App'x 369, 369 (Fed. Cir. 2002). Both are necessary to bring a federal action; however, only standing is jurisdictional. *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576–77 (1992). A party always has the threshold burden to demonstrate it has standing to bring its claims and proceed in the action. *See Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

Thus, while CPI is correct that the Tenth Circuit allows substitution pursuant to Fed. R. Civ. P. 17(a) when a "real" party in interest is discovered during the course of the litigation,[1] the rule does not relieve a plaintiff of its burden to satisfy jurisdictional requirements. *See Esposito v. United States*, 368 F.3d 1271, 1274 n.1 (10th Cir. 2004) ("Failure to name the real party in interest does not ordinarily create a jurisdictional defect; the 'real party in interest' issue [which exists for the benefit of the defendant] may in fact be waived if the defendant fails to present it in a timely fashion."); *see also In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009) ("[w]hile Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have 'Article III standing at the outset of the litigation.'") (quoting *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The question here, then, is whether CPI has standing to bring the present motion

---

[1]The benefit CPI would enjoy from substitution under Rule 17(a) is that once a real party in interest is substituted in the case, the "action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3).

and to proceed in this action.[2]

"While [a] district court generally follows the law of the Federal Circuit with respect to matters unique to patent law, the law of the Tenth Circuit applies to general or procedural issues in patent cases." *Barreca v. S. Beach Beverage Co., Inc.*, No. 03-cv-02372-PSF, 2005 WL 1899365, at *4 (D. Colo. Aug. 9, 2005) (citing *Charles Mach. Works, Inc. v. Dig. Control Inc.*, 264 F. Supp. 2d 980, 981 n.1 (W.D. Okla. 2003) (citing cases)); *see also Nat'l Presto Indus., Inc., v. W. Bend Co.*, 76 F.3d 1185, 1188 n.2 (Fed. Cir. 1996) ("On procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit, the law of the regional circuit shall be applied.").

In patent cases, standing is determined pursuant to the Patent Act and, thus, is a matter unique to patent law. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("Standing in a patent infringement case is derived from the Patent Act...."); *see also Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1248 (E.D. Wash. 2004) ("While standing can be a constitutional matter, the standing rules in intellectual property law are primarily rules of substantive law . . . ."). Therefore, the Court finds it proper to follow the law of the Federal Circuit to resolve the standing issue. *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010) (constitutional standing to assert patents against defendants is a question of law to which the court applies Federal Circuit precedent).

The Federal Circuit holds that, in a patent case such as this, the Patent Act creates a plaintiff's legally protected interests including "the right to exclude others from making, using,

---

[2]It matters not that MPS raised the issue of standing in its response brief, as opposed to in a motion. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) ("whenever standing is unclear, we must consider it *sua sponte* to ensure there is an Article III case or controversy before us.").

selling, or offering to sell a patented invention within the United States" and "the right to assert infringement of those interests." *Id.* at 1274: *see also First Data Corp. v. Inselberg*, 870 F.3d 1367, 1371 (Fed. Cir. 2017) ("only 'a patent owner or an exclusive licensee can have constitutional standing[3] to bring an infringement suit.'") (quoting *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, — U.S. —, 136 S. Ct. 1923, (2016)). Thus, to determine whether CPI possesses these interests, the Court must look to Federal Circuit precedent. *Id.*

The Federal Circuit has determined that to assert standing for patent infringement, a plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). When a plaintiff holds no enforceable rights in the patent at the time it filed suit, the plaintiff lacks a cognizable injury necessary to assert constitutional standing, and "[s]uch defect cannot be cured after the inception of the lawsuit." *Id.* at 1310. In *Paradise Creations*, the court concluded that the plaintiff had no rights in the patent when it filed suit and, thus, "this case was properly dismissed for want of standing, though the plaintiff may refile the action." *Id.*

There is no dispute in this case that the Plaintiff, CPI Card Group, Inc., is not, and has never been, the patentee to the subject '889 Patent. According to the Plaintiff, CPI Card Group—Minnesota owns the '889 Patent:

> The original patent application leading to the `889 Patent is U.S. Patent Application Serial No. 12/017,227. The '227 Application and any "continuations … based

---

[3]To have constitutional standing, "[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

7

thereon" were assigned by inventor Dennis Smith to UV Color, Inc. on June 5, 2008. UV Color then assigned the rights to the `227 Application and any continuations to CPI Card Group—Minnesota on March 9, 2010. On April, 8, 2011, U.S. Patent Application Serial No. 13/083,178, a continuation of the `227 Application, was filed. The `178 Application matured into the `889 Patent. Thus, CPI Card Group—Minnesota owns the `889 Patent and any other patents or patent applications in the `227 Application's family tree by virtue of the 2010 assignment.

Mot. 2 (citations omitted). CPI Card Group—Minnesota is a subsidiary of CPI. CPI claims that a substitution of CPI Card Group—Minnesota will result in no substantive changes to the action against MPS. While this may be true, there appears to be no dispute that CPI had no constitutional standing to bring the claims raised in this lawsuit. *See* Mot. 3 ("As it turns out, CPI Card Group—Minnesota has been the patentee (and not merely the entity that makes and sells the products embodying the `889 Patent) all along.").

The Federal Circuit holds that "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citing *Paradise Creations*, 315 F.3d at 1309); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010) ("Abraxis's complaint must be dismissed because Abraxis lacked standing at the time the action was filed and continues to lack standing to sue for past infringement.").

This Court interprets *Paradise*, *Schreiber*, and *Abraxis* to hold that a plaintiff having no constitutional standing at the filing of a patent action is not permitted to seek the addition or substitution of a party with standing during the course of the litigation. In other words, if the plaintiff has constitutional standing at least as to *some* claims or in some other respect, courts have generally allowed the plaintiff to seek addition or substitution of the real party in interest. *See, e.g.,*

*Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12182680, at **3 (E.D. Mich. June 21, 2013) (plaintiff who had constitutional standing at the filing of the original and amended pleadings had standing to seek substitution of the "exclusive licensee" who was the real party in interest); *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1301 (Fed. Cir. 2010) (". . . if International Mulch is found to be the legitimate assignee, only International Mulch has standing to sue for infringement. . . . Moreover, International Mulch is already a party to this suit. Therefore, if Green Edge is ultimately found not to have standing to pursue its infringement claim, International Mulch may be in a position to be substituted for Green Edge as the real party in interest.").

In a case cited by the Plaintiff, *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D.D.C. 1999), the court addressed an issue similar to that raised here and found that a plaintiff lacked standing to amend its complaint pursuant to Fed. R. Civ. P. 15 to "retroactively create jurisdiction by substituting Uniboard, the apparent current owner of the patent and thus the only party with standing to sue for its infringement." The court concluded, "Lans has no standing to be before the Court on any aspect of this matter." *Id.* at 118. At the same time, the court determined to analyze Lans' motion for substitution under Fed. R. Civ. P. 17(a) and found that "Lans's failure to join or sue in the name of Uniboard was [not] an honest and understandable mistake." *Id.* at 122. CPI contends here that this portion of *Lans* supports its position that the Court has discretion to apply Rule 17(a) even when a party lacks standing. Reply 3.

The Court disagrees and finds the *Lans* court's consideration of the plaintiff's Rule 17(a) argument at odds with its initial finding that Lans had no standing "on any aspect of this matter." *See, e.g., Lans v. Dig. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (where Lans argued that he "merely lack[ed] prudential standing because he [was] not the real party in interest," the appeals

9

court upheld the district court's grant of summary judgment for Lans' lack of standing); *see also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) ("[W]hereas [the original plaintiff] admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest"); *In re Spree.com Corp. (Tesler v. Certain Underwriters at Lloyd's London*), 295 B. R. 762, 775 (Bankr. E.D. Pa. 2003) (after plaintiff lacking standing invoked Fed. R. Civ. P. 17(a) to substitute a plaintiff with standing in his stead, court opined that "'[i]t seems almost unnecessary to state that the Federal Rules of Civil Procedure cannot be used to expand the subject matter jurisdiction of the district courts.' . . . If Tesler had no constitutional standing to even enter the realm of the federal courts, it stands *a fortiori* that he also lacks standing to invoke the procedural rules of that realm.") (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 886 (3d Cir. 1977) and citing *Zurich Ins. Co.*, 297 F.3d at 531).

The Tenth Circuit's opinion in *Esposito*, although it is not a patent case and does not mention standing, aligns with these holdings.[4] The court acknowledged that Mr. Esposito, the named plaintiff, suffered the injury alleged (death resulting from negligence), then it proceeded to consider whether the case could be pursued in Mr. Esposito's name as a decedent under Kansas law.

---

[4]CPI cites another opinion within the Tenth Circuit, *Bushnell, Inc. v. Brunton, Inc.*, 659 F. Supp. 2d 1150, 1160–61 (D. Kan. 2009), for the proposition that "forcing [a] plaintiff to file a new suit would be a waste of resources." Reply 3. However, the *Bushnell* court was not asked to consider a Rule 17(a) substitution but, rather, permitted Bushnell, which "now owned" the patent, to file an amended complaint reflecting such jurisdictional allegations, and ordered that "any damages or other right to relief under the '259 patent will run from the date of the amended complaint." *Bushnell*, 659 F. Supp. 2d at 1161. CPI does not seek such relief in this matter. *See* Mot. 5 ("CPI respectfully requests that the Court substitute CPI Card Group—Minnesota, Inc., as
plaintiff in this matter retroactive to the date of filing.").

*Esposito*, 368 F.3d at 1273–74. In other words, Mr. Esposito had constitutional standing, but may not have had prudential standing[5] to bring his claims. *See id.* CPI has cited, and the Court has found, no opinion by or in the Tenth Circuit granting a plaintiff, who had no standing to bring patent infringement claims, leave to substitute the real party in interest pursuant to Fed. R. Civ. P. 17(a).

This Court recognizes that certain courts have applied Rule 17(a) without requiring the plaintiff to demonstrate it had standing upon the filing of the operative pleading. In *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670 (S.D.N.Y. 2015), for example, the court questioned why it "should matter" whether a plaintiff had standing for "at least come of its claims" since "if a party has standing as to one claim, there is no reason why that fact should affect the analysis of standing as to a different claim." *Id.* at 678. The court also noted that, "[i]n certain circumstances, post-filing events may create subject matter jurisdiction where none existed" at the origination of an action. *Id.* However, the court eventually determined that the plaintiff, Digizip, had constitutional standing "even at the commencement of the lawsuit" but lacked prudential standing—that is, "whether Digizip was the 'real party in interest.'"[6] *Id.* at 678–79. Under such

---

[5]"The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.'" *Wilderness Soc'y*, 632 F.3d at 1168 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Courts have likened prudential standing with the "real party in interest" characterization. *See Brumfiel v. U.S. Bank*, 618 F. App'x 933, 936–37 (10th Cir. 2015).

[6]Notably, the Second Circuit has asserted, "Rule 17 does not ... affect jurisdiction and relates only to the determination of proper parties and the capacity to sue." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193–94 (2d Cir. 2003). The Second Circuit has since had occasion to address in a non-patent case the issue —"whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to all of its claims"—but concluded that it "need not" resolve the question because the relief requested by the plaintiff "would [not] have been consistent with Rule 17(a)(3)." *Cortlandt Street Recovery Corp. v. Hellas Telecomms. I, S.a.r.l*, 790 F.3d 411, 423 (2d Cir. 2015).

11

circumstances, *Digizip*, as other cases previously mentioned, is distinguishable from this case.

The only published case that appears similar to the facts and circumstances of this case is *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766 (S.D.N.Y. 2011), also cited by CPI in support of its motion. In *Park B. Smith*, the court found the plaintiff "failed to demonstrate that it held any exclusionary rights in the" subject patents and, thus, "did not have constitutional standing at the time it filed suit." *Id.* at 772–73. The court next considered whether the plaintiff could "cure the constitutional standing defect by substituting PBS Ltd., the owner by assignment of the '651 and '039 patents, as plaintiff pursuant to Rule 17(a)(3)." *Id.* at 773. The court determined that while true that "a plaintiff in a patent infringement suit may not cure a jurisdictional defect in standing by *adding* a party with standing . . . [i]t does not follow . . . that a standing defect may not be cured through *substitution* of the plaintiff under Rule 17(a)(3)." *Id.* (emphasis added).

In support of this determination, the *Park B. Smith* court cited opinions by and in the Second Circuit, including *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997), which is also cited by CPI here. This Court respectfully disagrees with *Park B. Smith*'s determination for the following reasons. First, none of the supporting cases cited are patent cases for which standing is governed by the Federal Circuit. *See Park B. Smith*, 811 F. Supp. 2d at 773–74. Second, *Park B. Smith* does not recognize that the plaintiff had no constitutional standing to seek any relief in the case. *See Abraxis Bioscience, Inc.*, 625 F.3d at 1366 ("Abraxis lacked standing at the time the action was filed and continues to lack standing to sue for past infringement"). And third, at least some of the supporting cases cited involved plaintiffs who had constitutional standing and sought to add or substitute real parties in interest. *See, e.g., Advanced Magnetics,* 106 F.3d at 20 (the plaintiff corporation originally had standing for its own claims before

seeking to add the shareholders' claims); *In re Vivendi Universal, S.A. Secs. Litig.*, 605 F. Supp. 2d 570, 583 (S.D.N.Y. 2009) (the court recognized that some plaintiffs had standing to bring suit, and others who did not sought to substitute real parties in interest). *Park B. Smith* is not binding, and the Court finds that the lack of support from Federal Circuit opinions deems it unpersuasive.

The Court concludes CPI has failed to demonstrate it had constitutional standing at the filing of the operative pleading in this case and, thus, CPI has no authority to seek substitution. Accordingly, the Court must dismiss CPI's claims without prejudice for the Court's lack of subject-matter jurisdiction to hear the claims. *Paradise Creations*, 315 F.3d at 1310.

At this point, the Court notes that CPI Card Group—Minnesota, the undisputed owner of the subject patent, has taken no action to join or enter this case. Indeed, the language in Rule 17(a) appears to require that a real party in interest *itself* seek to be joined or substituted into the action. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action . . . until, after an objection, a reasonable time has been allowed for *the real party in interest to ratify, join, or be substituted into the action*.") (emphasis added). The Court has found no case law supporting such requirement, but in a case cited by CPI, the District of Nebraska dismissed for lack of standing a plaintiff that did not own the patent at the time the lawsuit was filed, but permitted the real party in interest, *which had filed a motion to amend*, to be substituted into the action. *See Battle Sports Science, LLC v. Shock Doctor, Inc.*, 225 F. Supp. 3d 824, 830–32 (D. Neb. 2016). Even in *Park B. Smith*, the principal of the true patent owner submitted a declaration in support of the request for substitution. *See Park B. Smith*, 811 F. Supp. 2d at 775. Here, there is no submission from CPI Card Group—Minnesota's principals or attorneys, if any.

With this said, the Court finds it proper to consider whether CPI Card Group—Minnesota

13

may be permitted to file a motion to join in this action, with the caveat that any damages or other right to relief under the '889 patent would run from the date of joinder. This action was initiated more than a year ago, and the parties have engaged in extensive discovery, much of which likely will be relevant if CPI Card Group—Minnesota is a named plaintiff. It does not appear from the face of the operative Complaint that the subject infringement claim is barred by the statute of limitations. *See* ECF No. 1; *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, -- U.S. --, 137 S. Ct. 954, 961 (2017) (Section 286 of the Patent Act provides: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.") The Court perceives no prejudice to MPS with granting CPI Card Group—Minnesota the opportunity to move for joinder in this action; certainly, MPS will also have the opportunity to object pursuant to federal and local rules.[7]

Moreover, judicial economy and the Court's obligation "to secure the just, speedy, and inexpensive determination of every action" require that the Court grant CPI Card Group—Minnesota an opportunity to seek joinder in this action. *See* Fed. R. Civ. P. 1; *see also Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (finding joinder of a competitor defendant for pretrial matters proper stating that the defendant's "restricted 'interpretation of Rule 20 is a hypertechnical one that perhaps fails to recognize the realities of complex, and particularly patent, litigation. In essence, the [defendants] advocate a rule that requires separate proceedings simply because unrelated defendants are alleged to have infringed the same patent."). Although it

---

[7]The Court reminds MPS that any objection as to CPI Card Group—Minnesota's standing in this case would be contrary to this order.

would be proper for the Court to require CPI Card Group—Minnesota to file an entirely new action, the Court concludes the interests of justice and efficiency prevail.

## IV. Conclusion

Therefore, the Court finds CPI has failed to demonstrate it had standing to bring the claims in this action and, under Federal Circuit precedent, the Court must **deny as moot** CPI's Opposed Motion for Leave to Correct Complaint [filed September 21, 2017; ECF No. 122] and dismiss CPI's claims without prejudice for the Court's lack of subject-matter jurisdiction. However, the Court will stay the effect of the dismissal order[8] pending resolution of a motion for joinder to be filed by CPI Card Group—Minnesota on or before December 4, 2017. If CPI Card Group—Minnesota fails to file a motion for joinder before the deadline, the stay shall lift and the Clerk of the Court shall close the case.

Dated and entered this 27th day of November, 2017, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[8]*See Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK, 2012 WL 4856724, at *6 (D. Colo. Oct. 12, 2012) (dismissing the action for lack of subject matter jurisdiction but staying the effect of the dismissal order pending the filing of an amended complaint).