IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02536-MEH

CPI CARD GROUP, INC.,

      Plaintiff/Counter Defendant,

v.

MULTI PACKAGING SOLUTIONS, INC.,

      Defendant/Counter Claimant.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

      On September 21, 2017, Plaintiff CPI Card Group, Inc. ("CPI") moved for substitution of the "real Plaintiff in interest" under Federal Rule of Civil Procedure 15(a)(2), contending that the patent at issue was not actually assigned to CPI, but rather to its subsidiary, CPI Card Group—Minnesota, Inc. ("CPI-Minnesota"). *See* ECF No. 122. After briefing, I found that CPI failed to demonstrate its constitutional standing in this case, denied CPI's motion to substitute, and dismissed CPI's claims without prejudice for the Court's lack of subject matter jurisdiction. At the same time, in the interest of ensuring the just, speedy, and inexpensive resolution of this matter, I stayed the effect of the dismissal order and permitted CPI-Minnesota an opportunity to move for joinder in this action under Federal Rule of Civil Procedure 17(a). *See* Order at 15 & n.8, ECF No. 158 at 15 (citing *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-KMT, 2012 WL 4856724, at *6 (D. Colo. Oct. 11, 2012)).

      Before any motion for joinder was filed, Defendant Multi Packaging Solutions, Inc. ("MPS") filed a motion to dismiss on December 1, 2017, arguing that the Court lacks subject matter over ***all***

claims in this case, including MPS's counterclaims, and seeking in the alternative to voluntarily dismiss its counterclaims. *See* ECF No. 162. CPI-Minnesota then timely filed a motion for joinder asserting that naming CPI, rather than CPI-Minnesota, as the patent-owner Plaintiff at the commencement of this action was an honest mistake and that there is no prejudice to MPS in allowing CPI-Minnesota to join as the proper Plaintiff. *See* ECF No. 165. Finding that the Court has jurisdiction to address the pending motions, I grant MPS's request for voluntary dismissal of its counterclaims without prejudice. I also grant CPI-Minnesota's motion for joinder.

## I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

CPI initiated this action on October 11, 2016, alleging generally that MPS had infringed, and may continue to infringe, claims of a U.S. Patent No. 8,419,889 patent ("the '889 Patent"), titled "Ultrasecure Card Package," by making, using, importing, offering to sell, and selling its card packaging products. More specifically, CPI contends that MPS used "ZED" machinery to create the same patent-protected heat-sealing process used by CPI to seal its packaged prepaid debit cards. On December 13, 2016, MPS filed the operative amended answer and counterclaims for declaratory judgment of noninfringement and invalidity of the '889 Patent. The Court issued the governing Scheduling Order in a Patent Case on December 8, 2016, and, after a tutorial and hearing on August 29, 2017, the Court issued its claim construction order on October 23, 2017, then modified the Scheduling Order in accordance with the parties' proposals on October 31, 2017.

Shortly after the Court issued its order dismissing CPI's claims without prejudice but staying the effect of the dismissal order to allow CPI-Minnesota to file a motion for joinder, MPS filed the present motion to dismiss, asserting that the Court lacks subject matter jurisdiction over all claims, including MPS's counterclaims. MPS further asserts that this lack of subject matter jurisdiction

deprives the Court of authority to even address the motion for joinder.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (internal quotation marks omitted).

Previously, the Court expressed its belief that the dismissal of CPI's claims without prejudice for lack of jurisdiction will not automatically destroy its jurisdiction over MPS's counterclaims against CPI, which seek declaratory judgment of (1) noninfringement and (2) invalidity of the '889 Patent. *See* Nov. 29, 2017 Tr. 2: 7–11, ECF No. 163; *see also* First Amended Answer, ECF No. 34 (listing counterclaims). MPS now argues that the Court did not retain jurisdiction over the counterclaims after dismissal of CPI's claims and requests dismissal of the counterclaims if they are the sole reason that the Court has jurisdiction. CPI counters that although its legal claims will be dismissed for lack of standing, the Court has retained jurisdiction over CPI's claims for equitable relief (namely, an injunction). Opp'n to Mot. to Dismiss at 2–3, ECF No. 166. In addition, CPI asserts that the Court maintains jurisdiction over MPS's counterclaims because there still exists "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 3–6 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 764, 771 (2007)). CPI's opposing argument is intertwined with the

arguments raised in its Motion for Joinder. Given this overlap, I will first address whether the Court has jurisdiction over this case and, if so, whether it is proper to grant MPS's motion to dismiss its counterclaims. I will then analyze whether it is proper to join CPI-Minnesota in this action.

A.     Does the Court Have Jurisdiction to Address the Pending Motions?

At the outset, the Court notes that no party has cited a binding case directly addressing whether the Court loses jurisdiction to hear a motion to amend and/or join a patent owner when a plaintiff learns during litigation that it is not the true patent owner.

In its motion to dismiss and its opposition to CPI-Minnesota's motion for joinder, MPS focuses heavily on the continued viability of MPS's counterclaims and their effect, if any, on subject matter jurisdiction. MPS posits that upon dismissal of CPI's infringement claim the Court will automatically lose jurisdiction over MPS's counterclaims for invalidity and noninfringement because the counterclaims "sought declaratory judgment of MPS's rights against CPI as owner of the '889 patent asserting infringement by MPS." Mot. to Dismiss at 1, ECF No. 162. Stated otherwise, MPS's counterclaims must also be dismissed for CPI's lack of standing.

MPS cites *H.R. Technologies, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002), for the proposition that when a patent plaintiff lacks standing, "the defendant's corresponding patent counterclaims should be dismissed." Mot. to Dismiss, ECF No. 162 at 3. That case is readily distinguishable, though, because the Federal Circuit only upheld the dismissal of a counterclaim of ***noninfringement***. It reasoned that such claim was asserted against the wrong party because the named plaintiff could not defend a claim of noninfringement on behalf of the patentee, who was the real party in interest at that time. *See H.R. Techs.*, 275 F.3d at 1386. Here, by contrast, MPS has also asserted a counterclaim for ***invalidity*** of the '889 Patent. *H.R. Technologies* provides no insight

4

on the fate of that separate claim. Furthermore, at least one other district court has declined to dismiss a declaratory-judgment claim where the plaintiff "faced a real and imminent threat of infringement suit" that was "ultimately traceable" to a party who lacked technical standing to bring or join an infringement lawsuit. *See Simmons Bedding Co. v. Leggett & Platt, Inc.*, No. 11-cv-232-wmc, 2012 WL 11909449, at *10 (W.D. Wis. Mar. 27, 2012) (internal quotation marks omitted).

MPS also cites *Bishop v. Smith*, 760 F.3d 1070, 1091 n.13 (10th Cir. 2014), emphasizing that as part of the redressability requirement, a declaratory-judgment action must be brought against a defendant who can, if ordered to do so, remedy the alleged injury. This argument disregards CPI's ability to control CPI-Minnesota by virtue of the parties' corporate relationship. In any event, *Bishop* is not a patent case so the Tenth Circuit did not apply the relevant standard. *See MedImmune,* 549 U.S. at 771 (articulating the standard for declaratory-judgment actions in the patent context to be whether "there is a substantial controversy, between parties having adverse legal judgments, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" (internal quotation marks omitted)).

MPS's citation to *Fina Research, S.A. v. Baroid Limited*, 141 F.3d 1479, 1480-81 (Fed. Cir. 1998), is equally unavailing. That case examined whether there was an actual controversy between the parties in a declaratory judgment action when the plaintiff's only potential liability was for inducing patent infringement. Although *Fina Research* did not involve counterclaims, MPS seems to be arguing that if a claim would fall for lack of subject matter jurisdiction, so would a counterclaim on the same topic. *See* Opp'n to Mot. for Joinder at 2, ECF No. 158 (pairing the citation to *Fina Research* with a reference to *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), an insurance case stating that the inquiry in a declaratory judgment action is

the same even if the positions of the parties in the conventional suit are reversed).

MPS's jurisdictional authority requires the Court to make significant inferences. At the same time, MPS is unable to point to a patent case in which both noninfringement and invalidity counterclaims were dismissed as a direct result of a finding of lack of subject-matter jurisdiction over the primary claims, nor has this court located one. MPS has not presented a convincing argument that the Court does not have subject matter jurisdiction over either of its counterclaims.

Even if the Court did lack subject matter jurisdiction over the counterclaims, MPS has not persuaded the Court that the jurisdictional defect cannot be cured in any way such that immediate dismissal of the entire case is required. MPS continues to rely on *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005), for the proposition that "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." Notably, *Schreiber* did not actually address this issue: the plaintiff there had constitutional standing at the time the suit was commenced. Instead, the court addressed whether a party with standing at the outset of litigation could lose, then regain, standing before the entry of judgment by assigning, then reacquiring, a patent. *Id.* Referencing its previous holding "that the temporary loss of standing during patent litigation can be cured before judgment," the court concluded that the jurisdictional defect that existed due to the patent's transfer during litigation was cured. *Id.* at 1204 (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed. Cir. 2004)).

MPS's reliance on *Schreiber* is strained for another reason too. *Schreiber* cites *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003), to support the proposition that "the jurisdictional defect cannot be cured by the addition of a party with standing." But

*Paradise Creations* also involved an entirely different scenario: whether a state statute could retroactively confer standing on the plaintiff corporation, which claimed its patent rights under a contract executed at a time when it was administratively dissolved. *See id.* at 1305. In any event, the Federal Circuit specifically noted that the district court's order denying the plaintiff's motion to amend and to join the purported patent owners to the action was not before the court on appeal. *Id.* at 1306-07 n.1. Thus, neither *Schreiber* nor *Paradise* addressed whether it was proper to allow the actual patent owner to join in the suit if the plaintiff initially lacked standing to pursue the action.

The Northern District of Illinois made this very distinction in *Asius Technologies, LLC v. Sonion US, Inc.*, 835 F. Supp. 2d 554 (N.D. Ill. 2011), and clarified that the case law (including *Paradise Creations* in which the plaintiff "held no enforceable rights whatsoever in the patent at the time it filed suit") does "not hold that the patentee cannot be added by amendment to cure a defect in standing." *Id.* at 560-61. To reach this conclusion, the court analyzed *Schreiber* and *Paradise Creations* against the backdrop of *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed. Cir. 2001), in which the Federal Circuit invited (and then granted) a motion to join the patentee on appeal, effectively creating standing through appellate joinder. The court also referenced *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381-82 (Fed. Cir. 2000), in which the Federal Circuit acknowledged, but declined to exercise, its authority to join the patentee on appeal under Federal Rule of Appellate Procedure 27 to "preserve jurisdiction," while noting that such authority should be exercised sparingly.

A more recent opinion from the Federal Circuit supports the analysis in *Asius Technologies*. In *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1324 (Fed. Cir. 2017), the court determined the plaintiff lacked standing to assert infringement because no rights to the patent were

conveyed to the plaintiff. Even so, the court made clear that dismissal was required only if the party that filed suit did not ultimately join the proper party: "When the party that filed suit is not the 'patentee' under [35 U.S.C.] § 281 *and otherwise fails to join the patentee to the suit*, we dismiss all claims based on the subject patent." *Id.* (emphasis added) (citing *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618–19 (Fed. Cir. 2016)).

Cases from other districts are instructive as well. In *Park B. Smith, Inc. v. CHF Industries Inc.*, 811 F. Supp. 2d 766, 773-74 (S.D.N.Y. 2011), the court allowed substitution under Rule 17(a)(3) where there was a jurisdictional defect in constitutional standing. It reasoned that substituting the plaintiff "would not alter the substance of the action" and deemed substitution to be "the wiser answer to the problem of . . . avoiding [the] unnecessary delay and expense of requiring an action to be started anew where . . . the subject matter of the actions remains identical." *Id.* at 774 (internal quotation marks omitted). And it rejected the alternative of dismissing the lawsuit without prejudice to allow the proper plaintiff to file suit in its own name, nothing that under such an approach "the parties would soon be back in the same place." *Id.*

Similarly, several courts have allowed plaintiffs to cure a standing defect through Rule 17 in non-patent cases. *See, e.g.*, *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 676-80 (S.D.N.Y. 2015) (allowing plaintiff to cure a standing defect through Rule 17 to avoid a potentially unjust result); *Breaker v. United States*, 977 F. Supp. 2d 921, 933-34 (D. Minn. 2013) (permitting the substitution of a corporation as plaintiff, rather than dismissing the landowner's lawsuit against the United States Forest Service for lack of standing); *In re Vivendi Universal, S.A. Secs. Litig.*, 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) (stating that "a standing defect at the commencement of suit does not require dismissal of the action with prejudice" and explaining that

"[s]hould the real parties in interest, i.e., the persons or entities that had standing to bring plaintiff[s'] claims at the commencement of the suit, wish to ratify plaintiffs' actions, join the lawsuit, or substitute for the current plaintiffs, the court should allow those parties a reasonable time to do so"); *In re SLM Corp. Secs. Litig.*, 258 F.R.D. 112, 115-16 (S.D.N.Y. 2009) (discussing two copyright infringement actions in which the district court deemed assignments after the commencement of litigation to be a sufficient basis for continued maintenance of the suit, even though plaintiffs did not have Article III standing at the time the action was filed); *accord Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18-19 (2d Cir. 1997) (instructing that the district court should have considered the shareholders' request to become named plaintiffs under Rule 17 after it concluded the plaintiff who filed suit lacked standing).

Whether explicitly or implicitly, these courts found that a standing defect at the commencement of a lawsuit did not prevent them from ruling on other motions or allowing substitution within a reasonable time frame under Rule 17(a)(3). Though non-binding, the cases collectively illustrate the "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1555 (3d ed. 2018); *see also id.* (referencing "the general policy of the drafters of the federal rules that the choice of a party at the pleading stage ought not have to be made at the risk of a final dismissal of the action should it later appear that there had been an error").

Last, I turn to a related context for guidance. The Supreme Court has relied on Federal Rule of Procedure 21, which governs misjoinder and nonjoinder, to "avoid[]deciding" a plaintiff-union's standing to bring suit where "dismissing the petition and thereby requiring the plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial

administration." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989) (internal quotation marks omitted) (discussing *Mullaney v. Anderson*, 342 U.S. 415 (1952)). Likewise, the Federal Circuit has not hesitated to add parties under Rule 21 to avoid a dismissal for lack of standing in patent cases. *See Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1385 (Fed. Cir. 2015) (referencing the "practice of endorsing joinder of patent owners, under Rule 21 of the Federal Rules of Civil Procedure, in order to avoid dismissal for lack of standing"); *Mentor H/S, Inc.*, 240 F.3d at 1019 ("Ordinarily, when the plaintiff who brought suit is found to lack standing, the suit is dismissed. However, [Rule 21] permit[s] courts to drop or add parties 'at any stage of the action and on such terms as are just.'").

Based on this legal landscape, I find that while the Court will lose jurisdiction over all legal claims if the patent owner is not joined, it has not yet lost jurisdiction to address the motion to voluntarily dismiss counterclaims and the motion to join CPI-Minnesota in this case.[1] Therefore, I deny MPS's motion to dismiss for lack of jurisdiction.

B.      Is It Proper to Grant MPS's Voluntary Dismissal of Its Counterclaims?

In addition to arguing that the Court lacks jurisdiction, MPS moves to dismiss its counterclaims "to the extent necessary" under Federal Rule of Civil Procedure 41(a)(2). Mot. to Dismiss at 4, ECF No. 162. While CPI responded to MPS's jurisdictional arguments, it did not respond to MPS's Rule 41(a)(2) request.

Notably, Rule 41(a)(2) itself does not require that a movant demonstrate good (or any other) cause for its request. It simply states that "an action may be dismissed at the plaintiff's request only

_____

[1]Because of this finding, the Court need not reach CPI's argument that it has jurisdiction over CPI's equitable claim for an injunction by virtue of CPI's status as a parent corporation.

by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *see also Ryan v. Donley*, 511 F. App'x 687, 691 (10th Cir. 2013) (applying Rule 41(a)(2) to counterclaims). "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996) (internal quotation marks omitted). "These matters fall within the district court's discretion. . . . Absent legal prejudice to the defendant, the district court normally should grant such a dismissal." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (citations, brackets, and internal quotation marks omitted). Prejudice is assessed within well-established parameters:

> Prejudice does not arise simply because a second action has been or may be filed against the defendant, which is often the whole point in dismissing a case without prejudice. Rather, prejudice is a function of other, practical factors including: the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation. These factors are neither exhaustive nor conclusive; the court should be sensitive to other considerations unique to the circumstances of each case. And in reaching its conclusion, the district court should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff.

*Id.* at 1124 (citations, brackets, and internal quotation marks omitted).

Under the circumstances of this case (including that CPI indisputably is not the owner of the '889 Patent and the Court has jurisdiction to consider joinder of the true patent owner), I find that CPI would not suffer legal prejudice with the dismissal of MPS's counterclaims against it. Therefore, I grant MPS's motion to dismiss (without prejudice) its counterclaims against CPI under Rule 41(a)(2).

## II. Motion for Joinder

In its motion to "correct" the Complaint, CPI asserted that its counsel erroneously understood CPI had acquired all patents previously owned by CPI's subsidiaries as part of an initial public offering in October 2015 and explained the "correct" patent assignment history as follows:

> The original patent application leading to the '889 Patent is U.S. Patent Application Serial No. 12/017,227. The '227 Application and any "continuations … based thereon" were assigned by inventor Dennis Smith to UV Color, Inc. on June 5, 2008. UV Color then assigned the rights to the '227 Application and any continuations to CPI Card Group—Minnesota on March 9, 2010. On April, 8, 2011, U.S. Patent Application Serial No. 13/083,178, a continuation of the '227 Application, was filed. The '178 Application matured into the '889 Patent. Thus, CPI Card Group—Minnesota owns the '889 Patent and any other patents or patent applications in the '227 Application's family tree by virtue of the 2010 assignment.

> The assignment to CPI Card Group—Minnesota, however, does not appear in the assignment records for the '889 Patent. Instead, the '889 Patent's assignment records reflect a April 28, 2011, assignment of the '178 Application from inventor Dennis Smith to CPI. But this assignment (and the ones that come after it) is later in time than the March 2010 assignment to CPI Card Group—Minnesota. Thus, Mr. Smith had no rights to convey in the '178 Application at the time of his purported assignment to CPI/CPI Card Group—Colorado. Nor is there a subsequent assignment from CPI Card Group—Minnesota to CPI, presumably because no one realized that CPI Card Group—Minnesota still owned the '889 Patent despite Mr. Smith's 2011 assignment. As it turns out, CPI Card Group—Minnesota has been the patentee (and not merely the entity that makes and sells the products embodying the '889 Patent) all along.

Mot. for Leave to Correct at 2–3, ECF No. 122 (internal citations omitted). I denied the motion for CPI's lack of standing and stayed the order dismissing CPI's claims for relief to permit CPI-Minnesota to move for joinder in this case.

CPI-Minnesota now brings its motion under Rule 17 of the Federal Rules of Civil Procedure. Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In other words, an "action should be brought in the name of the party who possesses the substantive right being asserted under the applicable law, whether that be state or

federal." Federal Practice and Procedure § 1541. In addition, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

"The purpose of Rule 17(a) is to prevent forfeiture when determination of the proper party to sue is difficult . . . ." *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 782 F. Supp. 2d 1205, 1208 (D. Colo. 2011) (brackets omitted) (quoting *Garcia v. Hall*, 624 F.2d 150, 151 n.3 (10th Cir. 1980)). As such, "Rule 17(a) . . . must be given broad application." *Esposito v. United States*, 368 F.3d 1271, 1278 (10th Cir. 2004). *Esposito* was a wrongful death lawsuit, in which the district court originally lacked subject matter jurisdiction because the named plaintiff was the decedent, not the administratrix. *Id.* at 1274. The district court dismissed the lawsuit and denied the motion to substitute the decedent's wife as administratrix under Rule 17(a), concluding the mistake was not understandable. The Tenth Circuit found the denial of the substitution motion to be an abuse of discretion after clarifying the requirements underlying Rule 17(a). *Id.* at 1276-77.

In analyzing whether the real party in interest should be joined, the Tenth Circuit directs courts to "focus primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e., whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby." *Id.* at 1276. "Where a mistake in naming the correct party is 'honest,' there is no additional requirement that the mistake also be 'understandable.'" *Fairfield Dev., Inc.*, 782 F. Supp. 2d at 1208 (citing *Esposito*, 368 F.3d at 1277). To defeat joinder, there must be a "tangible showing" that the joinder will cause prejudice. *Scheufler v. Gen. Host Corp.*, 126 F.3d 1261, 1270 (10th Cir. 1997). In *Scheufler*, for example, the defendant was well aware of the "relevant parties" and "critical issues"

and had the option to conduct additional discovery, so the court found no tangible showing that joinder of the real party in interest would result in prejudice. *Id.*

CPI-Minnesota moves to join in this action as the patent owner and real party in interest. It argues that its failure to originate this action was an honest mistake; there has been no deliberate tactical maneuvering; and there will be no prejudice to MPS if CPI is allowed to join. MPS counters that application of Rule 17(a) is improper here because this Court has already ordered that "any damages or other right to relief under the '889 patent would run from the date of joinder"; CPI "knew or should have known of its ownership problem no later than January 2017, when it served infringement contentions"; a declarant in support of the motion, CPI's Chief Financial Officer, attested to facts about which she could not have known; and MPS would suffer prejudice since a parent and subsidiary are not the same legal entities and, thus, joinder would "require substantive changes to pleadings and alter damages calculations." Opp'n to Mot. for Joinder at 9-11. CPI-Minnesota replies that the Court's comment runs counter to the mandatory language of Rule 17(a)(3); CPI's CFO misstated her position in the original declaration but has corrected it in a subsequent declaration; CPI's President and CEO has corroborated the CFO's original testimony as true; the misidentification of the plaintiff in this case was truly an error by counsel and meant to harm no one; and MPS fails to make a tangible showing of prejudice. CPI's counsel corroborated this position by taking full responsibility for the error during the motion hearing on July 10, 2018.

A.      Is Rule 17(a) Procedurally Appropriate?

In arguing that Rule 17(a) does not apply to this case, MPS relies on a "caveat" stated in this Court's November 28, 2017, order that, should CPI-Minnesota be permitted to join, "any damages or other right to relief under the '889 patent would run from the date of joinder," *See* Order at 14,

ECF No. 158. At the time of its order, the Court believed the caveat was legally supported; however, the Court cited no law endorsing the caveat in its order and, now, can find no legal support for it. In fact, the language of Rule 17(a) provides to the contrary: "After ratification, joinder, or substitution, the action proceeds *as if it had been originally commenced by the real party in interest.*" Fed. R. Civ. P. 17(a)(3) (emphasis added); *see, e.g.*, *Estate of Smart v. City of Wichita*, No. 14-2111-EFM, 2018 WL 534335, at *3 (D. Kan. Jan. 24, 2018) ("This mandatory relation-back provision means that, once it is concluded that the [movant] is the real party in interest and . . . is allowed to join as a plaintiff, the [movant's] claim automatically relates back to the filing of the action." (internal quotation marks omitted)). To the extent this Court's November 28, 2017, unsupported "caveat" conflicts with Rule 17's mandatory language, that portion of the Court's order is vacated.

MPS provides no other argument persuading the Court that Rule 17(a) is not applicable to the circumstances of this case. Accordingly, I find Rule 17(a) properly applies to determine whether CPI-Minnesota may be joined as the real party in interest.

B.     Was the Failure to Name CPI-Minnesota as Plaintiff an "Honest Mistake"?

MPS next argues that "[s]imply forgetting a prior assignment is not an honest mistake." Opp'n to Mot. for Joinder at 9. It also asserts that CPI-Minnesota's explanation for the error is itself inconsistent: even if CPI's counsel and/or officers overlooked unrecorded documents assigning the '889 Patent to CPI-Minnesota, the recorded documents identify the assignee as CPI Card Group–Colorado, Inc. ("CPI-Colorado") and the evidence fails to explain why CPI-Colorado was not named as the Plaintiff in this case. *Id.* at 10. Moreover, MPS argues that CPI counsel's and officers' asserted belief that CPI "had acquired all patents previously owned by its subsidiaries"

makes no sense because "finding records of a transfer to one subsidiary (CPI–Minnesota) that predated a transfer to another subsidiary (CPI Card Group–Colorado, Inc.) should not have triggered a need to change the plaintiff, because either way the '889 patent would have been transferred to CPI Card Group, Inc." *Id.* This argument is insufficient to demonstrate that CPI-Minnesota did not make an honest mistake.

The record contains ample evidence of confusion. Furthermore, CPI-Minnesota's counsel declares that he concluded CPI owned the '889 Patent based on his communications with client representatives, review of the Patent Trademark Office records concerning the '889 Patent, and "belief that CPI Card Group, Inc. had acquired all patents previously owned by its subsidiaries." Decl. of David Bloch, Nov. 30, 2017 ("Bloch Decl.") ¶¶ 8–9, ECF No. 165-3. In addition, Steven P. Montross, President and Chief Executive Officer for CPI and CPI-Minnesota during all relevant times, declares that he believed CPI "had acquired all of the patents of its subsidiaries," including the '889 Patent, at the time the case was filed. Decl. of Steven Montross, Dec. 30, 2017 ("Montross Decl.") ¶ 4, ECF No. 169-1. Finally, Lillian Etzkorn, Chief Financial Officer for CPI since January 2017, declares that at the time she joined CPI, she "understood that the '889 patent was owned by CPI Inc." Decl. of Lillian Etzkorn, Jan. 2, 2018 ("Etzkorn Decl. II") ¶ 6, ECF No. 169-2. Ms. Etzkorn continues, "As the case progressed, I (along with other executives) authorized the continued pursuit of the case against MPS on behalf of CPI Inc. because CPI Inc. was given no reason to doubt that the '889 patent was owned by CPI Inc. or that CPI Inc. was the correct entity to pursue a claim of patent infringement against MPS." *Id.*

CPI-Minnesota also represents that it engaged in no "deliberate tactical maneuvering" through its error and, in fact, the error has been detrimental to itself by delaying this case. Mot. for

Joinder at 5. *Cf. Esposito*, 368 F.3d at 1276 (focusing on whether the defendant was prejudiced by the delay). The Court agrees. There is no record evidence establishing bad faith on the part of CPI or CPI-Minnesota or demonstrating any intent to deceive or to prejudice MPS through the error in naming CPI as the plaintiff; to the contrary, CPI promptly informed MPI and the Court of the error upon its discovery. Even MPS does not dispute that the failure to name CPI-Minnesota was a "mistake" or allege such mistake was dishonest or ill-motivated. For these reasons, I find that CPI-Minnesota's failure to commence this action was an "honest mistake."

C.      Has MPS Made a Tangible Showing That It Would Suffer Prejudice?

MPS contends that CPI-Minnesota's joinder "would require substantive changes to pleadings and alter damages calculations over a year into this litigation, as a parent and its subsidiary are not the same legal entities." Opp'n to Mot. for Joinder at 11. CPI-Minnesota counters that discovery in this case has already included "substantial information and documents about the work at the Minnesota facility that makes and sells the products practicing the '889 Patent" and that joining CPI-Minnesota "will not require amending the Scheduling Order or either party's contentions," nor will it change the Court's claim construction or the existing claim for damages. Mot. for Joinder at 5–6; Reply in Support of Mot. for Joinder at 3, ECF No. 169. In support of its position, representatives of CPI-Minnesota aver that it is wholly owned and controlled by its parent, CPI. *See* Decl. of Lillian Etzkorn, Dec. 4, 2017 ("Etzkorn Decl. I") ¶ 2, ECF No. 165-1; Decl. of Chris Bakke, Dec. 4, 2017 ("Bakke Decl.") ¶ 2, ECF No. 165-2; Montross Decl. ¶ 3.

While MPS may be correct that parents and subsidiaries generally are considered separate entities under corporate law, MPS fails to rebut, or even to acknowledge, that the proposed amended pleading demonstrates that joinder of CPI-Minnesota would result in only a formal change and

would not alter the original complaint's factual allegations in this case. *See* ECF No. 122-7. In fact, the only changes made to the pleading are the name of the Plaintiff, its address, and the following "fact": "CPI wholly owns U.S. Patent No. 8,419,889 ('the 889 Patent')." *Id.* ¶ 2. As such, MPS cannot plausibly argue that it was unaware of the "relevant parties" and "critical issues" in this case. *See Scheufler*, 126 F.3d at 1270.

Likewise, MPS does not rebut CPI-Minnesota's argument that discovery in this case has already included production of "substantial information and documents about the work at the Minnesota facility that makes and sells the products practicing the '889 Patent." However, to the extent that MPS can persuade the Court that it will require additional discovery to sufficiently defend CPI-Minnesota's infringement claim, I will entertain such a request and will consider whether the costs of such discovery should be shifted.

I conclude that CPI-Minnesota has demonstrated MPS would suffer no prejudice from CPI-Minnesota's joinder in this action. Not only is joinder appropriate, but it will facilitate the "just, speedy, and inexpensive determination" of this case in compliance with Federal Rule of Civil Procedure 1.

## III.    Conclusion

In sum, I find that the Court has jurisdiction to address the pending motions in this case and, considering the terms to be proper, dismiss without prejudice MPS's counterclaims pursuant to Fed. R. Civ. P. 41(a)(2). MPS's Motion to Dismiss All Claims and Counterclaims Without Prejudice . . . for Lack of Subject-Matter Jurisdiction [filed December 1, 2017; ECF No. 162] is **granted in part and denied in part**, and MPS's counterclaims are dismissed without prejudice.

I also find that CPI-Minnesota has demonstrated that its failure to commence this litigation

was an honest mistake and that MPS would suffer no prejudice resulting from its joinder in the action. CPI-Minnesota's Motion for Joinder Pursuant to Fed. R. Civ. P. 17(a)(3) [filed December 4, 2017; ECF No. 165] is **granted**.  CPI-Minnesota shall file a clean copy of the proposed Amended Complaint for Patent Infringement (ECF No. 122-7) on or before July 20, 2018, and the Defendant shall file an answer or other response to the pleading in accordance with Rule 15 of the Federal Rules of Civil Procedure.  Pursuant to Rule 17(a)(3), the case will proceed as if CPI-Minnesota filed the original Complaint.

The stay on the Court's November 28, 2017, order is now lifted.  As set forth in that order, the Court lacks subject-matter jurisdiction over the claims brought by CPI and, thus, those claims are dismissed without prejudice.

Dated and entered this 16th day of July, 2018, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge